Melissa **HALL**, Plaintiff,

v.

**LEE COLLEGE, INCORPORATED,**
Defendant.

No. 1:94–CV–432.

United States District Court,
E.D. Tennessee.

March 22, 1996.

---

**5.** *See* Footnote 3.

Debra L. House, Southeast Tennessee Legal Services, Cleveland, TN, M. Drew Robinson, Cleveland, TN, Michael C. Roebuck, John L. Lee, Southeast Tennessee Legal Services, Chattanooga, TN, for Melissa Hall.

Joseph R. White, Spears, Moore, Rebman & Williams, Chattanooga, TN, James F. Logan, Jr., Logan, Thompson, Miller, Bilbo, Thompson & Fisher, Cleveland, TN, for Lee College, Inc.

James F. Logan, Jr., Logan, Thompson, Miller, Bilbo, Thompson & Fisher, Cleveland, OH, for Henry Smith, Dr. Paul Conn, David Tilley, Larry W. McDaniel, Don Medlin, John B. White, H.B.H. Bernard Dixon, Lorenzo Walker, Bobby G. Ross, Fred G. Swank, Cecil N. Brown, B.K.B. Kenneth Jones, M.D.M. Darrell Rice, Bill W. Higginbotham, Raymond F. Culpepper, Edward E. Hollowell, Isaias Robles, Quan L. Miller.

### MEMORANDUM

COLLIER, District Judge.

Plaintiff, Melissa Hall, is a former student at Defendant Lee College, Inc. On October 14, 1993, she was notified by officials at Lee College she would be suspended from Lee College for violation of the school's policy prohibiting premarital sex by students of the school. Ms. Hall filed the instant lawsuit alleging she had been unlawfully discriminated against because of her gender. Her cause of action was founded upon the provisions of Title IX of the Education Amendments, 20 U.S.C. § 1681, and 42 U.S.C. § 1985(3). Named defendants in the complaint included Lee College and nineteen individuals, all of whom were either officials of the college or members of the governing body of the college. On October 25, 1995, Defendants filed a Motion for Summary Judgment (Court File No. 18). The Court granted the motion in part and denied it in part by dismissing the individual defendants and the section 1985(3) claim, but allowing the Title IX claim against Lee College to proceed (Court File No. 33).

The matter proceeded to trial on February 15, 1996 and concluded on February 16, 1996. The Court heard testimony from six witnesses. These witnesses were the Plaintiff, Melissa Hall, and five others who, at present or in the past, have been associated with Lee College, Brian Conn (a Lee College student), Dr. Charles Paul Conn (President of Lee College), Steve Sherman (a former Associate Dean of Students at Lee College), Dr. Henry

Smith (Associate Academic Dean and Vice President for Student Life at Lee College), and David Tilley (Vice–President and Executive Assistant to the President at Lee College). Having reviewed the testimony of the witnesses, considered the exhibits introduced at trial, considered the arguments and pleadings of counsel, and the applicable law, the Court, pursuant to *Fed.R.Civ.P.* 52, now enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I. *Factual Findings Relative to Lee College*

1. Lee College is a small private college located in Cleveland, Tennessee, within the Eastern District of Tennessee, affiliated with the Church of God.

2. The Church of God is a protestant Christian denomination that may be described as fundamental in its religious beliefs. The Church of God adheres to a literal interpretation of the bible.

3. The Church of God founded Lee College as a bible training school on January 1, 1919 (Joint Exh. 3, p. 5).

4. The Church of God provides financial support to Lee College.

5. One of the religious tenets of the Church of God is disapproval of premarital and extramarital sex.

6. Lee College had a policy prohibiting premarital and extramarital sex among its students.

7. Lee College was a recipient of federal funds in that students attending Lee College were eligible for, and received certain federally guaranteed financial assistance.

8. Lee College was aware of its obligations under Title IX and made efforts to comply with these obligations.

9. Lee College was the only school in its athletic conference that met its funding goals with respect to female athletics.

10. Lee College had an equitable salary structure between its male and female professors.

11. Four of the eight academic departments at Lee College were headed by females.

### II. *Factual Findings Relative to Plaintiff, Melissa Hall*

1. Plaintiff, Melissa Hall, is a former student of Lee College, first enrolling in the school in the fall of 1988 and graduating from Lee College in the summer of 1994.

2. Melissa Hall comes from a family of Church of God members and she regularly attended Church of God services and programs during her youth.

3. Melissa Hall has an older brother who attended Lee College prior to her matriculation.

4. In part, because of her older brother and the affiliation of Lee College with the Church of God, Melissa Hall chose to apply to Lee College.

5. Plaintiff completed an application for admission to Lee College, dated May 16, 1988, that contained her pledge to conform to the rules and regulations of Lee College while she was a student (Joint Exh. 10).

6. Plaintiff was provided with a copy of the 1988–89 Lee College Student Handbook upon her entrance to the college. That handbook contained the following language: "students who engage in sexual immorality whether premarital, or homosexual, will be expelled from the college" (Joint Exh. 2, p. 6).

7. Plaintiff was provided with copies of the Lee College Student Handbook at the beginning of the fall semester of each year of her attendance at Lee College.

8. The 1993–94 Lee College Student Handbook contained the following language: "engaging in sexual acts expressly condemned in Scripture (premarital sex, adultery, and homosexual practices) is unacceptable and prohibited and will result in suspension or expulsion" (Joint Exh. 3, p. 11).

9. That handbook also contains the following language concerning suspension: "when suspension occurs, a student must leave the college immediately but may apply

for readmission for the following semester. (This rule does not apply to summer sessions.)" (Joint Exh. 3, p. 14).

10. After entering Lee College, and while unmarried, Plaintiff became pregnant in 1991 and gave birth to a child in January 1992. Lee College took no action against the Plaintiff for this apparent violation of its policy prohibiting its students from engaging in premarital sex.

11. In February 1993, Plaintiff became pregnant again. Her pregnancy became obvious in the Fall of 1993 and was brought to the attention of administrators at Lee College.

12. Steve Sherman, then Associate Dean of Students, on or about October 11, 1993, became aware Plaintiff was pregnant (Joint Exh. 4). Sherman also knew Plaintiff was unmarried and had never been married.

13. In a meeting with Plaintiff in October 1993, Sherman verified that Plaintiff was pregnant and was unmarried. Sherman and Plaintiff discussed the policy prohibiting premarital sex and possible repercussions.

14. Sherman, Dr. Henry Smith, and other officials at Lee College, were personally acquainted with Plaintiff because she had worked in the college safety office and had come into contact with administrators at the school.

15. Plaintiff's pregnancy was the result of her engaging in consensual, voluntary sexual activities. At all times, she freely admitted this to Lee College officials and never intimated her pregnancy resulted from forced sexual activities.

16. Sherman reported his findings regarding Plaintiff's pregnancy and marital state to Dr. Henry J. Smith.

17. By letter dated October 14, 1993, Dr. Henry J. Smith, then Vice President for Student Life, notified Plaintiff she had violated the school policy concerning premarital sexual involvement in that she was "pregnant and unmarried" (Joint Exh. 5) and that this misconduct called for suspension.

18. In this letter, Smith also offered Plaintiff two other options which he considered "less disruptive to [her] educational program." The first option had Plaintiff "voluntarily" withdrawing from Lee College and receiving "W's" in all of her coursework. The second option had Plaintiff withdrawing from all coursework, except a required class, assuming her professor would work with her on an independent basis. Should Plaintiff select option two, she could not attend any classes after the next Friday and should not visit the Lee College campus until after her baby was born, except to meet with the professor who was working with her on the independent study (Joint Exh. 5).

19. Plaintiff chose not to select either of the two options offered.

20. By letter dated October 25, 1993, Dr. Smith notified Plaintiff she was suspended from Lee College but could apply for readmission for the following semester (Joint Exh. 6).

21. Plaintiff exercised her right to appeal the suspension by having her attorney, Debra L. House, write a letter to Dr. Paul Conn, President of Lee College (Joint Exh. 7). Her appeal was denied by letter dated November 8, 1993, from David Tilley, then Vice President and Executive Assistant to the President (Joint Exh. 8). President Paul Conn was out of town at the time and had delegated the responsibility to handle such matters to Tilley.

22. Plaintiff was thereupon suspended from Lee College, not allowed to finish the fall 1993 semester, and received no academic credit for her course work for that semester.

23. Plaintiff had her child in December 1993, and reentered Lee College in January 1994. She graduated from the college in summer 1994.

### III. *Factual Findings Relative to Lee College's Policy Prohibiting Premarital Sex*

1. Lee College's policy prohibiting premarital sex is drawn from the Church of God's and the college's religious and spiritual beliefs. Although the policy has undergone several iterations, it is a longstanding policy.

2. There have been instances where unmarried, pregnant, female students were not

suspended and allowed to remain in the dormitory where their pregnancy resulted from rape. In this instance, Lee College determined its policy had not been violated.

3. It has also been the practice of Lee College to allow students discovered to have violated its policy to reenter school if they marry prior to the suspension taking effect.

■ 4. The Court finds that this policy, on its face, is not discriminatory. On its face, the policy applies to both sexes. No evidence was produced supporting the college considered it proper for males to engage in premarital sex, but improper for females, or vice versa.

5. Since only females can become pregnant, the Court acknowledges that, in practice, females' violation of the policy may become known whereas a male's violation may remain secret. This may result in a disparate impact upon females. However, no such evidence was presented to the Court. Moreover, even if this is this case, the policy still passes muster in that the clear purpose of the policy is application to both sexes.

## IV. Factual Findings Relative to Lee College's Application of the Policy

1. Lee College has applied its policy prohibiting premarital sex in a uniform and consistent manner to members of both sexes (Joint Exh. 1). Generally, when a violation is brought to the attention of the administration of the college, a letter is sent to the student informing the student he or she has been suspended. Each letter is worded somewhat differently but the import is the same.

2. The policy has been applied against males and females (Joint Exh. 1). Females have been suspended when their violation was brought to the attention of the administration through other students, self-admission, or from outside sources. There is no indication in the letters of suspension that pregnancy on the part of the female is the sole or even predominant source of knowledge of the violation for the administration.

3. Both males and females are subjected to the same punishment, i.e., suspension. However, the effective date of the suspension differs according to when the violation is detected. If early in the semester, the student is suspended for that semester and is allowed to apply for readmission for the next semester. If the violation is discovered late in the semester, the student may be suspended for the next semester and is allowed to apply for readmission for the semester following the next semester. Summer school does not count toward a semester and a student suspended during the spring semester may not enroll in summer school; nor may a student, discovered in violation late in the spring semester but whose suspension is effective for the fall semester, be allowed to attend summer school.

4. As is the case with Plaintiff, there are instances where the violation of the policy was brought to the attention of the administration because the female student was obviously pregnant. However, there is no evidence that the college's policy was to suspend or discipline female students for becoming pregnant rather than from engaging in prohibited premarital sex. Nor is there evidence the college treated pregnant students differently than other students.

5. All witnesses called by Plaintiff, except for Plaintiff herself, testified that they knew of no discrimination in the application of the policy. The Court finds the witnesses credible on this issue and credits their testimony.

## V. Factual Findings Relative to Other Similarly Situated Students

1. No similarly situated students who were treated differently than Plaintiff were brought to the court's attention.

2. John Doe 17, Brian Conn, is not similarly situated to Plaintiff for three reasons. Brian Conn, a student at Lee College, in the spring of 1995 following examinations, notified his father, Dr. Paul Conn, that his (Brian Conn's) girlfriend, also a Lee College student, was pregnant. Dr. Paul Conn took steps to suspend both Brian Conn and the girlfriend. Both students received letters from Dr. Conn and Dr. Smith notifying them they were suspended for the fall semester. However, the letters mentioned if they married, the college might consider re-enrolling them. The couple did marry during the

summer and Brian Conn was readmitted to the college for the fall semester. This situation does not involve similarly situated individuals because, one, Brian Conn married his then pregnant girlfriend, so he was allowed to reenter school the next semester; two, because of the familial relationship with the college president, there is a possibility of considerations other than sex playing a role; and three, Brian Conn's girlfriend, also a Lee College student, received identical letters of suspension and readmission upon their marriage.

## CONCLUSIONS OF LAW

### Jurisdiction

1. Jurisdiction in this case is invoked pursuant to 42 U.S.C. § 1981 and 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Lee College is located within the Eastern District of Tennessee, Plaintiff resides within the Eastern District of Tennessee, and the complained of acts all took place within the Eastern District of Tennessee.

### Title IX

1. Title IX of the Education amendments of 1972, 20 U.S.C. § 1681(a), provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." Title IX, according to the Supreme Court, should be given "a sweep as broad as its language." *North Haven Board of Education v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982) (quoting *United States v. Price,* 383 U.S. 787, 800, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966).

2. Enforcement of Title IX, and promulgation of regulations thereunder, has been delegated to the Department of Education's Office for Civil Rights. Regulations issued pursuant to Title IX, 34 C.F.R. § 106.1 *et seq.,* provide more guidance. Section 106.31, reads in pertinent part:

Except as provided elsewhere in this part, no person shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under any academic ... or other education program or activity operated by a recipient which receives or benefits from Federal financial assistance.

Section 106.31(b) provides specific prohibitions. It provides:

Except as provided in this subpart, in providing any aid, benefit, or service to a student, a recipient shall not, on the basis of sex;

(4) Subject any person to separate or different rules of behavior, sanctions, or other treatment;

Section 106.40 contains specific prohibitions regarding marital status and pregnancy. It reads:

(a) *Status generally.* A recipient shall not apply any rule concerning a student's actual or potential parental, family, or marital status which treats students differently on the basis of sex.

(b) *Pregnancy and related conditions.* (1) A recipient shall not discriminate against any student, or exclude any student from its education program or activity, including any class or extracurricular activity, on the basis of such student's pregnancy, childbirth, false pregnancy ... unless the student requests voluntarily to participate in a separate portion of the program or activity of the recipient.

In a case such as this, the plaintiff has the burden of proving a violation of Title IX under the "intentional discrimination" standard of Title VI of the Civil Rights Act of 1964. *Chance v. Rice University,* 984 F.2d 151, 153 (5th Cir.1993); *Pfeiffer v. School Bd. for Marion Center Area,* 917 F.2d 779, 788–89 (3rd Cir.1990). *But cf Favia v. Indiana University of Pennsylvania,* 812 F.Supp. 578, 584 (W.D.Pa.1993).

In proving a violation of Title IX, a plaintiff may proceed by way of direct evidence of discrimination or by circumstantial evidence. Plaintiff here presented no evidence of direct discrimination and so proceeded under a circumstantial evidence theory. To prove her case, Plaintiff had the burden of proving (1) she was suspended

from Lee College, (2) the reason for or the motivating favor for her suspension was that she was female,[1] (3) males would not have been suspended under the same or similar circumstances and, (4) the actions of Lee College were intentional.

■ Based on the evidence presented at trial, the Court concludes Plaintiff has not carried her burden to prove the reason for her suspension, or a motivating factor in her suspension, was that she is female. Nor has she carried her burden of proving males would not have been suspended under the same or similar set of circumstances. Therefore, the Court concludes that even if intentional discrimination is not a necessary element of a Title IX claim, no violation has been proven here. Further, even if intentional discrimination is a necessary element of such a claim, such discrimination has not been proven in this case.

Accordingly, the Court finds against the Plaintiff and in favor of Defendant, Lee College.

### Statute of Limitations

During the trial, Defendant moved the Court for judgment as a matter of law pursuant to Rule 59, *Fed.R.Civ.P.*, based on the lack of evidence and Defendant's contention the statute of limitations barred Plaintiff's lawsuit. The Court previously addressed this argument in ruling on the motion for summary judgment (Court File No. 33). The Court adopts its reasoning there and denies Defendant's motion on this ground.

### Religious Exemption

Also during the trial, Defendant moved the Court for judgment as a matter of law pursuant to Rule 59, *Fed.R.Civ.P.*, based on the religious exemption contained in 20 U.S.C. § 1681(a)(3). That subsection provides that § 1681 "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." The Court previously addressed this argument in ruling on the motion for summary judgment

(Court File No. 33). No mechanism is spelled out in the statute by which a school can take advantage of the exemption. However, the regulations, 34 C.F.R. § 106.12, contain similar language. Section 106.12(a) provides that the regulations do not apply to educational institutions controlled by religious organizations "to the extent application of this part would not be consistent with the religious tenets of such organization." Section 106.12(b) contains a procedure for institutions to claim this exemption.

The Court has not found any cases construing either section 1681(a)(3) or 34 C.F.R. § 106.12. However, from reading both provisions, it is not clear that the procedure for claiming the exemption contained in the regulation applies to the exemption contained in the statute. Section 106.12(b) clearly refers to the exemption from the regulations set forth in section 106.12(a). It may very well be that to claim the exemption found in the statute, an educational institution need do nothing more than just raise the exemption.

However, the Court does not need to resolve this. The evidence is insufficient to show a violation of Title IX, so any further treatment of this issue is unnecessary. Accordingly, Defendant's motion on this ground is denied as moot.

### Conclusion

In accordance with the foregoing analysis, the Court concludes Plaintiff has failed to establish any violation of the provisions of Title IX on the part of Defendant, Lee College, with respect to her suspension. Accordingly, the Court will enter judgment in favor of Defendant, Lee College, and against Plaintiff, Melissa Hall, and will DISMISS this lawsuit with prejudice.

A Judgment shall enter.

---

1. Under this element, the Court includes factors of pregnancy and marital status as provided in 34 C.F.R. § 106.40.